UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LORETTA BESTER,

        Plaintiff,                                           Hon. Robert J. Jonker

v.                                                        Case No. 1:13-CV-1375

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and*

*Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).  The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence.  *See* 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla, but less than a preponderance.  *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted).  It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).  In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight.  *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 28 years of age on her alleged disability onset date. (Tr. 190). She completed high school and previously worked as a fast food worker. (Tr. 24). Plaintiff applied for benefits on September 17, 2010, alleging that she had been disabled since October 11, 2009, due to "back problems," fibromyalgia, and reading difficulties. (Tr. 190-98, 271). Plaintiff's applications were denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 94-179). On May 30, 2012, Plaintiff appeared before ALJ Janet Alaga-Gadigian with testimony being offered by Plaintiff and a vocational expert. (Tr. 33-78). In a written decision dated September 4, 2012, the ALJ determined that Plaintiff was not disabled. (Tr. 13-26). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-6). Plaintiff subsequently initiated this pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1]  If the Commissioner can make a

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from: (1) mild mental retardation; (2) reading disorder; (3) obesity; (4) mild scoliotic curve; (5) depression; and (6) post-traumatic stress disorder, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 16-19). The ALJ next

---

be performed (20 C.F.R. 404.1520(f)).

determined that Plaintiff retained the capacity to perform light work[2] subject to the following limitations: (1) she can never climb ladders, ropes, or scaffolds, but she can frequently climb ramps and stairs; (2) she can frequently balance, stoop, crouch, kneel, and crawl; (3) she can frequently perform bilateral reaching and overhead reaching; (4) she must avoid all exposure to/use of hazardous machinery and unprotected heights; (5) she is limited to unskilled jobs with SVP levels of 1 or 2[2] with simple, routine tasks that can be learned in approximately 30 days involving no more than simple work-related decisions with few workplace changes; and (6) she is limited to occasional, at most, interaction with the general public, co-workers, and supervisors.  (Tr. 19).

The ALJ found that Plaintiff cannot perform her past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding.  *See Richardson*, 735 F.2d at 964.  While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden.  *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added).  This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific

---

[2] Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567.  Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday."  20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983); *Van Winkle v. Commissioner of Social Security*, 29 Fed. Appx. 353, 357 (6th Cir., Feb. 6, 2002).

[2] SVP ratings measure the "amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  *See* Dictionary of Occupational Titles, Appendix C, available at http://www.occupationalinfo.org/appendxc_1.html (last visited on February 24, 2015).  A job with an SVP rating of 1 corresponds to a job that a typical worker can perform after a "short demonstration only."  A job with an SVP rating of two corresponds to a job that a typical worker can perform after "anything beyond short demonstration up to and including 1 month."  *Id.*

jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert at the administrative hearing.

The vocational expert testified that there existed approximately 17,900 jobs in the lower peninsula of Michigan, and approximately 856,000 jobs nationally, which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 71-76). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The ALJ concluded, therefore, that Plaintiff was not entitled to disability benefits.

**I.        Section 12.05 of the Listing of Impairments**

The Listing of Impairments, detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1, identifies various impairments which, if present to the severity detailed therein, result in a finding that the claimant is disabled. Plaintiff argues that she is entitled to relief because the ALJ improperly determined that she does not satisfy Section 12.05 (Mental Retardation) of the Listing. Section 12.05 of the Listing provides, in relevant part, the following:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
>
> OR
>
> B. A valid verbal, performance, or full scale IQ of 59 or less;
>
> OR
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function;
>
> OR
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>
> > 1. Marked restriction of activities of daily living; or
> >
> > 2. Marked difficulties in maintaining social functioning; or
> >
> > 3. Marked difficulties in maintaining concentration, persistence or pace; or
> >
> > 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.05 (2006).

Specifically, Plaintiff asserts that she satisfies section 12.05(C). When Plaintiff was 17 years of age she participated in cognitive testing the results of which revealed that she possessed

a verbal IQ of 66, a performance IQ of 70, and a full-scale IQ of 65 "placing her in the mildly mentally retarded range of intellectual functioning." (Tr. 19). Plaintiff also suffers from physical and emotional impairments which impose additional and significant work-related limitations, as evidenced by the ALJ's RFC determination.

While Plaintiff satisfies the criteria articulated in subsection (C), she must also establish that she satisfies the "diagnostic description" of mental retardation articulated in the introductory paragraph of Section 12.05. *See* 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.00(A) ("[i]f your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets" section 12.05); *Cooper v. Commissioner of Social Security*, 217 Fed. Appx. 450, 451 (6th Cir., Feb. 15, 2007); *see also*, *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (to satisfy Section 12.05, the claimant must demonstrate that she experienced deficiencies in adaptive functioning prior to age 22).

When attempting to determine whether a claimant suffered deficiencies in adaptive functioning, ALJs may consider various factors including the claimant's work history. *See* 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.00(D) (recognizing that when evaluating mental disorders, a claimant's work history is "particularly useful" in assessing the extent of impairment); *see also*, *Williams v. Sullivan*, 970 F.2d 1178, 1185 (3rd Cir. 1992) (claim of mental retardation contradicted by the fact that claimant was able to "maintain a job for most of his adult life"); *Crayton v. Callahan*, 120 F.3d 1217, 1219-20 (11th Cir. 1997) ("a valid IQ score need not be conclusive of mental retardation, where the IQ score is inconsistent with other evidence in the record concerning the claimant's daily activities and behavior").

8

In this case, the ALJ relied on Plaintiff's work history as evidence that she did not suffer the requisite level of deficiency in adaptive functioning. (Tr. 19). Specifically, the ALJ stated:

> Although the claimant received valid IQ scores below 70, the evidence failed to support listing-level severity of her mild mental retardation. The claimant worked for many years in a semi-skilled occupation as a cashier despite her impairment.

(Tr. 19).

A review of Plaintiff's work history, however, leads the Court to conclude that the ALJ placed far too much significance on such. First, as the vocational expert testified, Plaintiff did not work as a cashier, but instead was merely a "fast food worker" with "minimal" responsibilities. (Tr. 72-73). This assessment is consistent with Plaintiff's description of her job duties, Plaintiff's reports of her activities, and school records which characterize Plaintiff's ability as "in the low educable mentally impaired range." (Tr. 40-45, 277-88, 321-28, 387-89). Furthermore, Plaintiff did not work full time, but instead worked less than half-time. (Tr. 41, 210-13, 272, 302-04). In sum, Plaintiff's work history is an insufficient basis from which to conclude that Plaintiff did not suffer deficiencies in adaptive functioning.

In support of her conclusion that Plaintiff did not suffer deficiencies in adaptive functioning, the ALJ also relied on the vocational expert's testimony that there existed a significant number of jobs which Plaintiff could perform consistent with her RFC. (Tr. 19). This is irrelevant, however. Assessing a claimant's RFC and determining whether such precludes employment are performed at Steps 4 and 5, respectively, of the sequential evaluation process. Such matters are completely irrelevant to the determination, at Step 3 of the sequential analysis, whether Plaintiff's impairments satisfy any section of the Listing of Impairments.

Finally, the ALJ relied on her conclusion that "no State Agency doctor or consultive physician opined the claimant's limitations met listing 12.05." (Tr. 19). While this statement is not necessarily inaccurate it is misleading. In support of this conclusion, the ALJ cited to several items in the record. As Plaintiff correctly notes, however, none of the evidence cited by the ALJ represents an assessment of whether Plaintiff satisfies Section 12.05(C) of the Listing of Impairments. Rather, the evidence cited by the ALJ is an assessment that Plaintiff fails to satisfy the requirements of Section 12.05(D) of the Listing. (Tr. 501-18). As noted above, the requirements of Section 12.05(C) are distinct from the requirement of Section 12.05(D). Thus, this particular evidence is, at most, only marginally relevant and hardly constitutes substantial evidence to support the ALJ's conclusion.

In sum, the Court finds that the ALJ's decision that Plaintiff did not satisfy the requirements of Section 12.05(C) of the Listing of Impairments is not supported by substantial evidence.

### II.     Treating Physician Doctrine

Between July 28, 2011, and May 3, 2012, Dr. Mario Cesario completed three different assessments of Plaintiff's physical residual functional capacity. (Tr. 633-34, 745-46, 779-80). In each assessment, the doctor reached the same conclusions, namely that Plaintiff is limited to an extent greater than that recognized by the ALJ's RFC determination. The ALJ, however, "rejected" Dr. Cesario's opinions. (Tr. 23). Plaintiff asserts that she is entitled to relief because the ALJ's rationale for discounting Dr. Cesario's opinions is not supported by substantial evidence.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical

condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with

other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

In support of her rejection of Dr. Cesario's opinions, the ALJ first noted that the doctor "seemed to rely heavily on the functional evaluation completed by Mr. Biederbeck, the physical therapist." (Tr. 23). This is an accurate statement as Dr. Cesario expressly stated this his opinions were "based on" the assessment completed by the "physical therapist." (Tr. 612, 745, 779). As the ALJ correctly noted, a physical therapist is not an acceptable medical source whose opinion is entitled to any deference. The ALJ also noted that Dr. Cesario's opinions were inconsistent with his contemporaneous treatment notes, treatment directives, and objective medical evidence. This conclusion is supported by substantial evidence. X-rays and MRIs of Plaintiff's spine have been unremarkable. (Tr. 490, 519). Treatment notes also indicate that Plaintiff's back pain and emotional impairments responded favorably to medication. (Tr. 752). In sum, the ALJ's decision to discount Dr. Cesario's opinion is supported by substantial evidence.

**III.       Consultive Physician's Opinion**

The ALJ gave "great weight" to the "mental health assessment" of consultive physician Dr. Jung Kim. (Tr. 100-02). One of Dr. Kim's conclusions was that Plaintiff is "moderately limited" in her ability to "accept instructions and respond appropriately to criticism from supervisors." (Tr. 101). Plaintiff argues that the ALJ erred by failing to incorporate this specific limitation in her RFC determination. The record fails to support that Plaintiff is limited in this regard to an extent beyond that recognized by the ALJ's RFC determination. Accordingly, this argument is rejected.

**IV.        Remand is Appropriate**

As discussed herein, the Court concludes that the ALJ's decision at Step 3 of the sequential evaluation process is not supported by substantial evidence. While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if "all essential factual issues have been resolved" and "the record adequately establishes [her] entitlement to benefits." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994); *see also*, *Brooks v. Commissioner of Social Security*, 531 Fed. Appx. 636, 644 (6th Cir., Aug. 6, 2013). This latter requirement is satisfied "where the proof of disability is overwhelming or where proof of disability is strong and evidence to the contrary is lacking." *Faucher*, 17 F.3d at 176; *see also*, *Brooks*, 531 Fed. Appx. at 644.

While the record establishes that Plaintiff experiences significant functional limitations, the Court cannot conclude that Plaintiff is entitled to disability benefits. Plaintiff bears the burden to establish that she satisfies the requirements of a listed impairment. *See Kirby v.*

13

*Comm'r of Soc. Sec.*, 2002 WL 1315617 at *1 (6th Cir., June 14, 2002). While Plaintiff has demonstrated that the ALJ's decision in this regard lacks sufficient evidentiary support, she has not demonstrated that she satisfies Section 12.05(C). Resolution of this issue requires expertise which this Court does not possess and the resolution of factual disputes which this Court is not permitted to undertake in the first instance. There may also exist additional issues which need to be explored on remand. The undersigned recommends, therefore, that the Commissioner's decision be reversed and this matter remanded for further factual findings.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: February 27, 2015

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge